**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

KARL IRELAND,                  :    Civil Action No. 04-5372(NLH)
                               :
          Plaintiff,           :
                               :
     v.                        :    OPINION
                               :
BOROUGH OF HADDONFIELD,        :
                               :
          Defendant.           :
```

**APPEARANCES:**

    F. Michael Daily, Jr., Esquire
    F. Michael Daily, Jr., LLC
    216 Haddon Avenue
    Sentry Office Plaza
    Suite 100
    Westmont, New Jersey 08108

    Attorney for Plaintiff


    William M. Tambussi, Esquire
    Susan M. Leming, Esquire
    Willam F. Cook, Esquire
    Brown & Connery, LLP
    360 Haddon Avenue
    Westmont, New Jersey 08108

    Attorneys for Defendant

**HILLMAN**, District Judge

    This matter has come before the Court on Defendant's motion for summary judgment on Plaintiff's claims that Defendant violated his rights under the Family Medical Leave Act and the New Jersey Law Against Discrimination. For the reasons set forth below, Defendant's motion will be granted.

**BACKGROUND**

In January, 1999, Plaintiff, Karl Ireland, was hired by Defendant, Borough of Haddonfield, as a sanitation engineer. (Compl. ¶ 7.) During his employment with the Borough, Ireland suffered numerous injuries from occupational hazards, including bee stings and injuries to his knees, shoulders and back. (Id. ¶¶ 12-13.) In August, 2000, Ireland had orthoscopic surgery on his right knee. (Ireland Aff. ¶ 2.) After returning to work in September, 2000, Ireland twisted his knee while getting out of a truck, and he was "put back out of work on Worker's Compensation." (Id. ¶ 4.) Throughout 2001, Ireland continued to have pain in his knee and he, or his wife, would "call in sick" from work in order to treat his knee with rest and ice as directed by his doctor. (Id. ¶ 5-7.) Ireland also missed work for food poisoning, a stomach virus, and the flu. (Id. ¶ 12.) When Ireland missed work, in his phone call to the Borough he would explain the reason for his absence. (Id. ¶ 7-10.) For these absences, he would use his vacation time when he ran out of sick time. (Id. ¶ 13.)

On November 13, 2002, while using a Borough vehicle to go to a convenience store to purchase lunch, Ireland was involved in an automobile accident. (Compl. ¶ 14-16.) Due to his injuries, Ireland "was out of work for two weeks." (Compl. ¶ 17.) Because he had no more sick time, on November 15, 2002 the Borough

2

terminated Ireland for excessive absenteeism.  (Compl. ¶ 19.) Ireland filed a grievance over his termination, which was sent to arbitration and ultimately denied.[1]  (Compl. ¶ 19; Pl.'s Ex. P at 26.)

In his Complaint, Ireland contends that because he did not have any sick time remaining, after the accident he was "forced into Family Medical Leave Act ["FMLA"] as he had significant bodily injuries that required treatment and healing."  (Compl. ¶ 18.)  Ireland claims that the absences used as a basis for termination were due to a "serious medical condition," which is protected by the FMLA.  (Compl. ¶ 22.)  As a result, Ireland claims that the Borough violated his rights under the FMLA and New Jersey Law Against Discrimination ("NJLAD").  (Compl. ¶¶ 27, 30.)  The Borough has moved for summary judgment on both of Ireland's claims.

---

[1] In his Opinion, the arbitrator noted that Ireland "missed approximately three (3) months in calendar year 2000, two (2) months in calendar year 2001, and over five (5) months in a 10.5-month period in calendar year 2002.  Therefore, in 34.5 months, [Ireland] was out of work approximately ten (10) months or 29.4% of the time."  (Pl.'s Ex. P at 23.)  The arbitrator found that since the bulk of the absences experienced by Ireland were attributable to work-related injuries, the Borough had demonstrated that Ireland's absenteeism caused him, "through no fault of his own, to fall into the Lack of Dependability category . . . to such an extent that discharge from employment is warranted on that basis."  (Id. at 25.)

**DISCUSSION**

**A.     Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has

4

met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Id.</u> Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. <u>Anderson</u>, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

**B.   The Family Medical Leave Act**

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq., was enacted to provide leave for workers whose personal or medical circumstances necessitate leave in excess of what their employers are willing or able to provide. <u>Victorelli v. Shadyside Hosp.</u>, 128 F.3d 184, 186 (3d Cir. 1997) (citing 29 C.F.R. § 825.101). The FMLA is both intended and expected to benefit employers as well as their employees in order to balance the demands of the workplace with the needs of families. 29 C.F.R. § 825.101(b),(c).

To present a claim under the FMLA, a plaintiff must show: (1) he is an eligible employee under the FMLA, (2) the defendant is an employer subject to the requirements of the FMLA, (3) he was entitled to leave under the FMLA, (4) he gave notice to the defendant of his intention to take FMLA leave, and (5) the

defendant denied him the benefits to which he was entitled under the FMLA.  Parker v. Hanhemann University Hosp., 234 F. Supp. 2d 478, 483-84 (D.N.J. 2002).  Here, it is uncontested that Ireland was eligible for FMLA leave during his employment with the Borough, and that the Borough was subject to the requirements of the FMLA.  Consequently, the only issues before the Court concern whether Ireland was entitled to FMLA leave, whether he gave the Borough proper notice of his intention to take FMLA leave, and whether the Borough denied Ireland the benefits he was entitled to.

   1.   *Whether Ireland was entitled to FMLA leave*

   The FMLA entitles eligible employees to twelve workweeks of leave under certain circumstances.  See 29 U.S.C. § 2612.  One circumstance is the onset of a "serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  In connection with this section, "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, or continuing treatment by a health care provider."  29 U.S.C. § 2611(11); see also 29 C.F.R. § 825.114(a).  Thus, in order to have been entitled to FMLA leave, Ireland needed to have had a serious medical condition when he allegedly availed himself to the FMLA leave.

   The parties not only dispute whether Ireland had a serious

medical condition, they differ on what injury constitutes his alleged serious medical condition. The Borough contends that Ireland did not have any medical condition, serious or otherwise, at the time he alleges he availed himself to FMLA leave. In the alternative, the Borough contends that if Ireland had an injury, it was an elbow injury, and that his elbow injury was not sufficiently serious to qualify under the FMLA. Ireland, however, argues that he did have a serious medical condition, and the condition was his injured knees.

>Starting from the beginning, Ireland's Complaint states:
>
>16. Plaintiff was involved in an automobile accident which he was not at fault and the other driver accepted full responsibility.
>17. However due to his injuries plaintiff was out of work for two weeks.
>18. At that time plaintiff had little if any sick time remaining and was forced into Family Medical Leave Act as he had significant bodily injuries that required treatment and healing.
>19. Despite their knowledge of the extent of his injuries, on November 15, 2002 defendants terminated plaintiff for excessive absenteeism.
>. . .
>22. At the time in question the absences used as a basis for termination were due to a serious medical condition and thus were protected by the F.M.L.A.

(Compl. ¶¶ 16-22.)

A plain reading of these allegations reveals that Ireland claims he sustained serious injuries from the automobile accident that necessitated his absence from work beyond his available sick time, and that those absences qualified as FMLA leave because

they were a sufficiently serious medical condition.  In contrast to the plain reading of the Complaint, Ireland's Opposition to the Borough's summary judgment motion details a series of injuries that Ireland sustained on the job, but ultimately argues that Ireland's knee injuries are his serious medical condition.  (Pl.'s Opp. at 1-3, 11.)  In further contrast to both the Complaint and Ireland's Opposition, Ireland's deposition testimony reveals that he did not sustain any injuries in the accident, and that the day before the accident he did not want to take any leave.  (Ireland Dep. at 95-96.)

Ireland's claim that he had a serious medical condition when he allegedly availed himself to the FMLA leave fails for several reasons.  First, Ireland's simple failure to articulate the nature of his serious medical condition demonstrates that he did not have one.[2]  Second, whatever the nature of Ireland's alleged injuries, he has not provided any evidence that one of his injuries--to either his knees, elbow, or resulting from the automobile accident--required inpatient care at a hospital or

---

[2]Recognizing Ireland's inconsistency over what constitutes his serious medical condition, the Borough attempts to articulate a possible serious medical condition for Ireland by suggesting that Ireland's ailment was his elbow injury he sustained on October, 24, 2002, and for which injury he had been on light duty.  Because Ireland does not embrace or reject this suggestion, the Court will not consider it other than to note that Ireland's doctor cleared him for full duty on the date of the accident, (Def.'s Ex. 14), and Ireland testified that he never notified the Borough that he wanted to take leave for that injury.  (Ireland Dep. at 92.)

continuing treatment by a health care provider.  Indeed, all of the record evidence suggests that Ireland was able and willing to work both before and after the November 13, 2002 incident.[3] Therefore, because Ireland has failed to proffer any evidence from which a reasonable jury could conclude he suffered a "serious medical condition," as defined by the FMLA, as of the date of his termination, Ireland was not entitled to FMLA leave.

### 2. *Whether Ireland gave the Borough proper notice of his intention to take FMLA leave*

Even if Ireland felt that he was entitled to FMLA leave, or could articulate a serious medical condition, he did not notify the Borough of his intention to take FMLA leave as required by the Act.  Under the FMLA, even though an employee does not need

---

[3] In further support of Ireland's lack of a serious medical condition, on November 15, 2002 Ireland received a note from the Orthopedic Wellness Center regarding his elbow that stated that he was able to return to full duty on that date. (Def.'s Ex. 16.)  This note is in addition to his other doctor's note that had already cleared him for full duty as of November 13, 2002. (Def.'s Ex. 14.)

Additionally, Ireland's employment subsequent to termination is also telling.  In January 2003, Ireland took a job at a laundry business.  That job required Ireland to drive a tractor-trailer, deliver supplies to hospitals, and do heavy lifting of a minimum of fifty pounds. (Ireland Dep. at 114-15.)  Following recovery from a broken collar bone after a motorcycle accident, Ireland was hired at a recycling plant where he was required to lift metal between 100 and 190 pounds or more. (Id. at 116-17.)  After that job, Ireland took a physically-demanding position with an ice company. (Id. at 118.)  This employment history indicates that Ireland had not been suffering from a serious medical condition following his employment with the Borough due to injuries to his knees, elbow, or resulting from the accident.

to expressly assert his rights under the FMLA or even mention the FMLA, an employee is expected to give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible.  29 C.F.R. § 825.303.  The notice must sufficiently explain an employee's reason for needing leave so as to allow the employer to determine that his request is covered by the FMLA.[4]  See, e.g., Sherrod v. Philadelphia Gas Works, 57 Fed. Appx. 68, 73, 2003 WL 230709, *3 (3d Cir. 2003) (holding that an employee did not have a cause of action under FMLA "because she failed to give her employer sufficient notice that her requested leave qualified under the statute"); see also Shtab v. Greate Bay Hotel and Casino, Inc., 173 F. Supp. 2d 255, 264 (D.N.J. 2001)(citing H.R. Rep. No. 103, at 39 (1993); S.Rep. No. 103- 3, at 27-28 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3) (explaining that in order to safeguard the interests of employers and prevent abuses by employees, Congress included a provision in the FMLA which entitles employers to request medical certification from an employee requesting leave).

---

[4] An employer also has a duty to notify employees of their FMLA rights.  29 C.F.R. § 825.304 (stating that the notice "condition would be satisfied by the employer's proper posting of the required notice at the worksite where the employee is employed").  Ireland testified that information on the FMLA was posted on the bulletin board in the lunch room where the punch clock was located.  (Ireland Dep. at 110.)  Thus, the Borough has met its notice requirement under the Act.

10

Ireland's inability to articulate what injury constitutes his serious medical condition speaks directly to Ireland's ability to give notice to the Borough. First, Ireland has not presented any evidence that he notified the Borough of his intention to take leave following the accident, and for what injury. Second, contrary to the allegation in his Complaint, Ireland was not out of work for two weeks due to his injuries because he was terminated two days after the accident. Correspondingly, Ireland could not have given notice about requiring leave for injuries sustained in the accident because Ireland states that he was not injured in the accident. Finally, if Ireland claims that following the accident he needed leave for any of his previous injuries, his statement that the day before the accident he did not want to take any leave contradicts that claim.

Thus, because Ireland did not want to take any leave the day before the accident, and he did not sustain any injuries in the accident, it is unclear for what injury Ireland would have requested leave if he had notified the Borough. It is not surprising that Ireland has not proffered any evidence that he provided the Borough with proper notice of his intention to take FMLA leave.[5]

---

[5] If Ireland is claiming that the Borough should have unilaterally construed his past absences as FMLA leave rather than sick time in determining whether to terminate him for

### 3. *Whether the Borough denied Ireland the benefits he was entitled to*

A plaintiff can seek recovery for a violation of the FMLA under two different theories, the entitlement theory and the retaliation, or discrimination, theory. Parker v. Hanhemann University Hosp., 234 F. Supp. 2d 478, 485 (D.N.J. 2002). Under the entitlement theory, an employee can allege that an employer has violated the FMLA because he was denied the entitlements under the Act. Id. In order to prove an entitlement case, the employee only needs to show that he was entitled to the benefits under the FMLA and that he was denied them. Id.

---

excessive absences, that claim is unsupportable. Even though Ireland was not required to specifically assert his FMLA rights to be entitled to them, he was required to notify the Borough of his serious medical condition so that the Borough could be on notice that Ireland's time out of work may have qualified under the FMLA.

    Ireland states that during the course of his employment he mentioned his reasons for calling out of work. See Ireland Affidavit. Intermittently calling out sick for knee injuries and other ailments over the course of three years of employment is not sufficient to alert the Borough of a serious medical condition that requires leave beyond his available sick days. See, e.g., Sherrod v. Philadelphia Gas Works, 57 Fed. Appx. 68, 73, 2003 WL 230709, *3 (3d Cir. 2003) (holding that an employee did not have a cause of action under FMLA "because she failed to give her employer sufficient notice that her requested leave qualified under the statute"); cf. Viereck v. City of Gloucester City, 961 F. Supp. 703, 707 (D.N.J. 1997) (holding the plaintiff's notice to her employer sufficient under the FMLA when the employer learned that the plaintiff's medical leave was for an FMLA purpose after it had begun because "[a]lthough plaintiff did not mention the FMLA by name at that time, she described the nature and extent of her injuries to [her employer], informed him that she had been hospitalized, and told him that she would be unable to return to work for some time due to her medical condition").

Under the retaliation theory, an employee can allege that an employer discriminated against him because he exercised his rights under the FMLA. <u>Id.</u> at 487-88. To prove a retaliation case, the employee must first establish a prima facie case of retaliation by showing (1) he availed himself of a protected right, (2) he was adversely affected by an employment decision, and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. <u>Id.</u> at 488. If the employee establishes his prima facie case, he creates a rebuttable presumption that the employer unlawfully discriminated against him and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's termination. <u>Id.</u> If the employer meets its burden, the burden shifts back to the employee, who must then show that the employer's stated reason for terminating him was in fact a pretext for retaliating against him because he took the protected FMLA leave. <u>Id.</u> (discussing the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973)).

It is evident from the analysis above that Ireland has not supported a claim under either the entitlement theory or retaliation theory. An entitlement claim fails because absent proper notice and a serious medical condition Ireland was not entitled to any FMLA benefits, and, therefore, the Borough did not deny him any benefits to which he was entitled. A

13

retaliation claim fails for the same reason: Ireland cannot establish a prima facie case for retaliation for the availment of a benefit he never requested.  Consequently, Ireland has failed to prove that the Borough denied him the benefits he was entitled to.

**C.   New Jersey Law Against Discrimination**

The Borough has also moved for summary judgment on Ireland's claim under the New Jersey Law Against Discrimination ("NJLAD"). The NJLAD prohibits "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment."  N.J. Stat. Ann. 10:5-4.1.  A claim under the NJLAD also follows the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  In order to establish a prima facie case under the NJLAD, an employee must prove (1) that he was disabled, (2) that he was performing his job at a level that met his employer's legitimate expectations, (3) that he nevertheless was fired, and (4) that the employer sought someone to perform the same work after he left.  Viscik v. Fowler Equipment Co., 800 A.2d 826, 834 (N.J. 2002).  Once the prima facie case has been established, the McDonnell Douglas analysis is followed in all other respects. Id.

14

Thus, the threshold inquiry into a discrimination charge under the NJLAD is whether a plaintiff fits the statutory definition of "disabled." Id.  To meet that standard, a plaintiff must prove that he is (1) suffering from physical disability, infirmity, malformation or disfigurement (2) which is caused by bodily injury, birth defect or illness including epilepsy. N.J. Stat. Ann. 10:5-5(q).  By way of example, but not limitation, the following are included within the notion of physical handicap: Any degree of paralysis, amputation, lack of physical coordination, blindness or visual impediment, deafness or hearing impediment, muteness or speech impediment or physical reliance on a service or guide dog, wheelchair, or other remedial appliance or device. Viscik, 800 A.2d at 834 (citing N.J. Stat. Ann. 10:5-5(q)).  Where the existence of a handicap is not readily apparent, expert medical evidence is required. Id. at 835 (citations omitted) (explaining that "courts place a high premium on the use and strength of objective medical testimony in proving the specific elements of each test contained in the statute").

As the Borough points out, Ireland does not address in his Opposition brief the Borough's argument that it is entitled to judgment on Ireland's NJLAD claim because Ireland did not suffer from any "disability" at the time of his termination. Consequently, because the Borough's motion on Ireland's NJLAD is

unopposed, and because it is evident from the above analysis that Ireland has not met his burden of showing that he suffered from a NJLAD-recognized disability when he was terminated, the Borough is entitled to summary judgment on Ireland's NJLAD claim.

## **CONCLUSION**

Ireland has failed to identify specific facts and affirmative evidence to support his claims under the Family Medical Leave Act and the New Jersey Law Against Discrimination. Therefore, because there is no genuine issue as to any material fact, the Borough is entitled to judgment as a matter of law on both claims in Ireland's Complaint. An appropriate Order will issue.


Dated: September 1, 2006           s/ Noel L. Hillman
Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.